FILED
JUN -2 AM 3:40

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MASSACHUSETTS**

Stanley Nazaire,

Plaintiff,

v.

Equifax Information Services, LLC,

Defendant.

Civil Action No.: ______________

**JURY TRIAL DEMANDED**

# COMPLAINT

## INTRODUCTION

1. Plaintiff Stanley Nazaire ("Mr. Nazaire" or "Plaintiff") brings this action against Equifax Information Services, LLC ("Equifax" or "Defendant") for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. ("FCRA"), arising from Equifax's unlawful failure to clearly and accurately disclose all information in Plaintiff's consumer file as required by 15 U.S.C. § 1681g(a)(1), its maintenance and reporting of material per se inaccuracies in violation of 15 U.S.C. § 1681e(b), and its failure to conduct a reasonable reinvestigation of disputed account information in violation of 15 U.S.C. § 1681i. Pro se complaints must be liberally

construed and held to less stringent standards than formal pleadings drafted by attorneys. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

2. On April 26, 2026, Plaintiff requested his consumer file disclosure from Equifax pursuant to 15 U.S.C. § 1681g. Equifax furnished Plaintiff with a consumer credit report bearing Confirmation Number 6116528416 ("the April 2026 Disclosure"). Upon review, Plaintiff discovered that the April 2026 Disclosure was materially incomplete, internally inconsistent, and contained per se inaccurate information across multiple tradelines. In excess of two hundred forty (240) individual data fields were blank, omitted, or populated with static placeholder dates that render the disclosure incapable of communicating accurate, verifiable information to the consumer.

3. Pursuant to 15 U.S.C. § 1681g(a)(1), Equifax was required to "clearly and accurately disclose" to Mr. Nazaire "[a]ll information in the consumer's file at the time of the request." Equifax systematically failed to do so. The omissions are not random; they follow an identical pattern across every account on the report, confirming that the withholding of data from consumer-facing disclosures reflects a deliberate software policy, not isolated data-entry error. The Federal Trade Commission placed all consumer reporting agencies on notice of this obligation over twenty-five years ago in its Advisory Opinion to Darcy (June 30, 2000).

4. The April 2026 Disclosure also contains multiple per se inaccuracies in which the reported balance on at least three accounts exceeds the stated credit limit — an error that no minimally compliant data-quality system would permit. Furthermore, two accounts on the disclosure carry active consumer-dispute notation (Narrative Code 166 — Consumer Disputes This Account Information), confirming that Equifax received prior consumer disputes and is currently obligated to conduct a reasonable reinvestigation under 15 U.S.C. § 1681i.

5. Plaintiff seeks actual damages, statutory damages of $100 to $1,000 per willful violation, punitive damages, costs of this action, injunctive relief directing Equifax to provide a complete and corrected file disclosure, and such other relief as the Court deems just and proper.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1681p, which provides that any action to enforce liability under the FCRA may be brought in any appropriate United States district court, and pursuant to 28 U.S.C. § 1331, as this action arises under federal law.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in Peabody, Massachusetts, within the District of Massachusetts, and a substantial part of the events and omissions giving rise to the claims herein occurred in this district.

## PARTIES

8. Plaintiff Stanley Nazaire is a natural person residing at P.O. Box 58, Peabody, Massachusetts 01960. Mr. Nazaire is a "consumer" within the meaning of 15 U.S.C. § 1681a(c).

9. Defendant Equifax Information Services, LLC is a Georgia limited liability company with its principal place of business at 1550 Peachtree Street NW, Atlanta, Georgia 30309. Equifax may be served through its registered agent: Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

10. Equifax is a "consumer reporting agency" ("CRA") within the meaning of 15 U.S.C. § 1681a(f), in that, for monetary fees, it regularly engages in the practice of assembling or evaluating consumer credit information for the purpose of furnishing consumer reports to third

parties, using means and facilities of interstate commerce. As a nationwide CRA, Equifax is fully aware of its obligations under the FCRA.

## FACTUAL ALLEGATIONS

### A. Credit Report Overview

11. On April 26, 2026, Plaintiff requested his consumer file disclosure from Equifax pursuant to 15 U.S.C. § 1681g. Equifax furnished the April 2026 Disclosure bearing Confirmation Number 6116528416, dated April 26, 2026.

12. The April 2026 Disclosure contains eleven (11) credit accounts, no public records, and no hard inquiries. The accounts span a credit history of approximately ten years and five months, with the oldest account dating to November 2015 and the most recently opened account dating to March 2025.

13. Section 1681g(a)(1) of the FCRA mandates that a CRA "shall, upon request and proper identification of any consumer, clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request." The term "file" is defined by 15 U.S.C. § 1681a(g) as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored."

14. As the Federal Trade Commission stated in its Advisory Opinion to Darcy (June 30, 2000), a CRA that withholds or obscures data fields from a consumer's own disclosure while transmitting that same data to third-party purchasers does not provide "accurate" or "clear" disclosure of "all information" in the consumer's file as required by 15 U.S.C. § 1681g(a)(1). Although the Darcy Opinion primarily addressed account number truncation, the FTC's

analytical framework applies with equal force to any category of data that Equifax withholds from the consumer's own disclosure while transmitting it to third-party recipients.

15. As the court held in Alexander v. Equifax Info. Servs., LLC, 2018 WL 3025939 (D. Nev. 2018), a file disclosure is deficient when it is "unclear such that the consumer cannot determine the accuracy of the information in that disclosure." The April 2026 Disclosure fails this standard across multiple accounts.

16. Pro se complaints are to be liberally construed and held to less stringent standards than formal pleadings drafted by attorneys. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

## <u>B. § 1681g(a)(1) — Incomplete File Disclosure: Account-by-Account Inventory</u>

17. The April 2026 Disclosure omits material data fields — including Actual Payment Amounts, Last Payment Dates, scheduled payment amounts, and payment history grid entries — across every account. In total, the disclosure contains in excess of two hundred forty (240) blank, missing, or static placeholder data fields. The following account-by-account inventory documents the specific omissions:

**Account 1: MACYS/CITIBANK NA — Account Number on File with Plaintiff (*2925)**

18. The Actual Payment Amount field is blank for all twenty-four (24) of the twenty-four months in the 24-Month Balance History, spanning the period April 2024 through March 2026. The Scheduled Payment Amount field is blank for nine (9) of the twenty-four months (July 2025 through March 2026). The "Date of Last Activity," "Deferred Payment Start Date," "Date Closed," "Balloon Payment Date," and "Term Duration" fields in the account header are all blank. The Last Payment Date column shows the identical static placeholder date of 12/17/2024 repeated without variation across nine consecutive monthly rows (January 2025 through March

2026), including months in which the account carried a Charge Off designation — confirming that Equifax is inserting a static programmatic placeholder rather than actual payment data. Equifax cannot account for the same last payment date repeating identically across every charged-off month from January 2025 through March 2026.

**Account 2: BARCLAYS BANK DELAWARE — Account Number on File with Plaintiff (*6162)**

19. The Actual Payment Amount field is blank for five (5) of the twenty-four months: January 2026, August 2025, February 2025, June 2024, and April 2024. The payment history grid shows "No Data Available" (ND) cells throughout calendar year 2019 (all months), and multiple ND cells across 2020, 2022, and 2023 — a period during which this account was open and active. The account header fields "Date of Last Activity," "Date Major Delinquency 1st Reported," "Deferred Payment Start Date," "Balloon Payment Date," "Balloon Payment Amount," "Term Duration," and "Activity Designator" are all blank.

**Account 3: CREDIT ONE BANK — Account Number on File with Plaintiff (*6288)**

20. The Actual Payment Amount field is blank for four (4) of the twelve months reported: September 2025, July 2025, June 2025, and April 2025. The payment history grid shows "No Data Available" (ND) cells for the first six months of the account's existence (January 2025 through June 2025), even though the account was opened March 28, 2025 and was active during those months. The Last Payment Date for April 2025 is blank. The account header fields "Date of 1st Delinquency," "Date Major Delinquency 1st Reported," "Deferred Payment Start Date," "Date Closed," "Balloon Payment Date," "Balloon Payment Amount," "Term Duration," and "Activity Designator" are all blank.

**Account 4: AMERICAN EXPRESS — Account Number on File with Plaintiff (*1553)**

21. The Actual Payment Amount field is blank for all twenty-four (24) of the twenty-four months in the 24-Month Balance History, spanning April 2024 through March 2026. The Last Payment Date field is blank for all twenty-four (24) months. The Past Due Amount field is blank for all twenty-four (24) months. The account header fields "Actual Payment Amount," "Date of Last Payment," "Date of 1st Delinquency," "Date Major Delinquency 1st Reported," "Deferred Payment Start Date," "Date Closed," "Balloon Payment Amount," "Balloon Payment Date," "Term Duration," and "Activity Designator" are all blank. The payment history grid shows "No Data Available" (ND) cells in January and February 2022. The aggregate omission for this single account alone exceeds forty-eight (48) blank or missing data fields in the 24-month history, exclusive of header field omissions.

**Account 5: CAPITAL ONE BANK USA NA — Account Number on File with Plaintiff (*4878)**

22. The Actual Payment Amount field is blank for all twenty-four (24) of the twenty-four months in the 24-Month Balance History, spanning April 2024 through March 2026. The Past Due Amount field is blank for all twenty-four (24) months. The account header fields "Actual Payment Amount," "Date of 1st Delinquency," "Date Major Delinquency 1st Reported," "Deferred Payment Start Date," "Date Closed," "Balloon Payment Amount," "Balloon Payment Date," "Term Duration," and "Activity Designator" are all blank.

**Account 6: JPMCB CARD SERVICES — Account Number on File with Plaintiff (*0588)**

23. The Actual Payment Amount field is blank for all twenty-four (24) of the twenty-four months in the 24-Month Balance History, spanning April 2024 through March 2026. The Past Due Amount field is blank for all twenty-four (24) months. The payment history grid shows "No Data Available" (ND) cells in January through June 2021 — months during which the account

was open. The account header fields "Actual Payment Amount," "Date of 1st Delinquency," "Date Major Delinquency 1st Reported," "Deferred Payment Start Date," "Date Closed," "Balloon Payment Amount," "Balloon Payment Date," "Term Duration," and "Activity Designator" are all blank.

**Account 7: CREDIT ONE BANK — Account Number on File with Plaintiff (*8460)**

24. The Actual Payment Amount field is blank for four (4) of the twenty-four months: August 2025, June 2025, April 2025, and December 2024. The account header fields "Date of 1st Delinquency," "Date Major Delinquency 1st Reported," "Deferred Payment Start Date," "Date Closed," "Balloon Payment Amount," "Balloon Payment Date," "Term Duration," and "Activity Designator" are all blank.

**Account 8: CREDIT ONE BANK — Account Number on File with Plaintiff (*6154)**

25. The Actual Payment Amount field is blank for five (5) of the twenty-four months: January 2026, August 2025, June 2025, April 2025, and December 2024. Narrative Code 166 — "Consumer Disputes This Account Information" — appears in the January 2026 reporting row, establishing that Plaintiff submitted a dispute to Equifax regarding this account and that dispute is unresolved. The account header fields "Date of 1st Delinquency," "Date Major Delinquency 1st Reported," "Deferred Payment Start Date," "Date Closed," "Balloon Payment Amount," "Balloon Payment Date," "Term Duration," and "Activity Designator" are all blank.

**Account 9: SYNCB/PAYPAL CREDIT CARD — Account Number on File with Plaintiff (*3409)**

26. The Actual Payment Amount field is blank for eight (8) of the months reported: February 2026, January 2026, December 2025, July 2025, June 2025, January 2025, November 2024, and August 2024. Narrative Code 166 — "Consumer Disputes This Account Information" — appears

in the April 2024 reporting row, establishing that Plaintiff submitted a prior dispute to Equifax regarding this account. The account header fields "Actual Payment Amount," "Date of 1st Delinquency," "Date Major Delinquency 1st Reported," "Deferred Payment Start Date," "Date Closed," "Balloon Payment Amount," "Balloon Payment Date," "Term Duration," and "Activity Designator" are all blank.

**Account 10: TD BANK USA/TARGET CREDIT — Account Number on File with Plaintiff (*1229)**

27. The Actual Payment Amount field is blank for ten (10) of the sixteen months reported: July 2025, June 2025, May 2025, April 2025, March 2025, February 2025, January 2025, November 2024, October 2024, and September 2024. The Last Payment Date column shows the identical static placeholder date of 12/17/2024 repeated without variation across seven consecutive monthly rows (January 2025 through July 2025), including months long after the account was closed. The Scheduled Payment Amount field is blank for all months in which the account was open.

**Account 11: CAPITAL ONE BANK USA NA — Account Number on File with Plaintiff (*4061)**

28. This account, opened February 15, 2016, carries a reported review period of eighty-nine (89) months and was last active in October 2023. The April 2026 Disclosure provides no 24-Month Balance History table whatsoever for this account. The balance field in the account header is blank. The payment history grid shows "No Data Available" (ND) cells in January 2019, February 2019, March 2019, March 2020, April through August 2023, and October through December 2023 — months during which the account was open and active. The wholesale omission of the account's entire 24-month balance history, combined with multiple

ND cells in the payment history grid, deprives Plaintiff of the ability to review and verify the accuracy of any of the account's reported data.

**C. Systemic Static Placeholder Date Pattern**

29. The identical static placeholder date of December 17, 2024, appears as the "Last Payment Date" repeated without variation across nine (9) consecutive monthly rows of the MACYS/CITIBANK NA tradeline (January 2025 through March 2026) and across seven (7) consecutive monthly rows of the TD BANK USA/TARGET CREDIT tradeline (January 2025 through July 2025). The fact that the same date — December 17, 2024 — appears as a static, unchanging entry across both accounts spanning entirely different time periods confirms that Equifax's disclosure-generation system is programmatically inserting a fixed placeholder into data fields rather than populating them with actual transactional data. This systemic pattern demonstrates a deliberate policy-level omission, not isolated data error.

**D. Aggregate Missing Field Count**

30. Based on the foregoing account-by-account review, the April 2026 Disclosure contains in excess of two hundred forty (240) blank, missing, or static placeholder data fields across all eleven tradelines. This aggregate omission renders the disclosure materially deficient under 15 U.S.C. § 1681g(a)(1). The itemized field inventory is attached hereto as Exhibit C.

**E. Per Se Inaccuracies — Balance Exceeds Credit Limit**

31. Section 1681e(b) of the FCRA requires that CRAs "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." A report showing a balance that exceeds the stated credit limit is a per se inaccuracy because it is impossible for an accurately maintained revolving credit account to carry a balance greater than its credit limit without a corresponding update to the limit. Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1163 (9th Cir. 2009).

32. MACYS/CITIBANK NA (*2925): The April 2026 Disclosure reports a current balance of $479.00 against a stated credit limit of $200.00. The balance exceeds the credit limit by $279.00. This inaccuracy has persisted across every reporting month from at least April 2024 through March 2026 — twenty-four consecutive months — without correction.

33. BARCLAYS BANK DELAWARE (*6162): The 24-Month Balance History reflects a balance of $789.00 in the January 2026 reporting period against a stated credit limit of $750.00 (excess of $39.00), and a balance of $760.00 in the March 2025 reporting period against a stated credit limit of $750.00 (excess of $10.00). Each instance independently constitutes a per se inaccuracy.

34. CAPITAL ONE BANK USA NA (*4878): The 24-Month Balance History reflects a balance of $2,544.00 in the March 2026 reporting period against a stated credit limit of $2,500.00 (excess of $44.00). This constitutes a per se inaccuracy.

35. The failure by Equifax to implement a basic automated data-integrity check comparing the "Balance" field against the "Credit Limit" field on the same account entry is objectively unreasonable under the standard established in Safeco Insurance Co. of America v. Burr, 551 U.S. 47, 69 (2007). Any minimally compliant consumer reporting system would flag and reject such inconsistencies before publishing a consumer report.

**F. Prior Consumer Disputes — § 1681i Counts Available**

36. Narrative Code 166 — "Consumer Disputes This Account Information" — appears in the January 2026 reporting row of the CREDIT ONE BANK tradeline bearing account number ending in *6154. This code establishes that Plaintiff previously submitted a dispute to Equifax regarding this account and that the dispute remained unresolved as of the April 2026 Disclosure.

37. Narrative Code 166 — "Consumer Disputes This Account Information" — also appears in the April 2024 reporting row of the SYNCB/PAYPAL CREDIT CARD tradeline bearing account number ending in *3409. This code establishes that Plaintiff previously submitted a dispute to Equifax regarding this account.

38. Because Narrative Code 166 is affirmatively present on the face of two accounts in the April 2026 Disclosure, confirmed prior consumer disputes exist, and Plaintiff's reinvestigation claims under 15 U.S.C. § 1681i are ripe for inclusion in this initial filing. Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 891 (9th Cir. 2010) (prior dispute is a prerequisite for § 1681i claims).

**G. Equifax's Reinvestigation Failures**

39. Despite receiving Plaintiff's disputes regarding the CREDIT ONE BANK (*6154) and SYNCB/PAYPAL CREDIT CARD (*3409) accounts, Equifax failed to conduct a reasonable reinvestigation as required by 15 U.S.C. § 1681i(a)(1)(A). The continued presence of Narrative Code 166 — an active dispute notation — on the April 2026 Disclosure, generated and furnished

to Plaintiff on April 26, 2026, confirms that the disputed information remained unresolved and uncorrected.

40. A CRA cannot fulfill its reinvestigation obligation by merely submitting an Automated Consumer Dispute Verification ("ACDV") form to the data furnisher and accepting whatever the furnisher returns without independent inquiry. Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997). A reinvestigation limited to rubber-stamping a furnisher's ACDV response, without review of consumer-submitted documentation or independent analysis, is unreasonable as a matter of law. Ghazaryan v. Equifax Info. Servs., LLC, 740 F. App'x 157, 158 (9th Cir. 2018).

41. On information and belief, Equifax's reinvestigation of Plaintiff's disputes consisted solely of transmitting an ACDV to each respective data furnisher and accepting the furnisher's response without independent analysis — a practice that courts have repeatedly condemned as insufficient. The persistence of Code 166 as an active dispute notation on the April 2026 Disclosure, issued weeks or months after the dispute was received, is evidence that Equifax failed to complete or adequately conduct its reinvestigation.

42. Furthermore, Equifax failed to provide notification of the disputed status of the CREDIT ONE BANK (*6154) and SYNCB/PAYPAL CREDIT CARD (*3409) accounts to third parties who subsequently obtained or accessed Plaintiff's consumer report, as required by 15 U.S.C. § 1681i(c).

## <u>H. Third-Party Dissemination and Article III Standing</u>

43. As the Supreme Court held in TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2209 (2021), actual dissemination of a consumer report containing inaccurate information to a third

party constitutes a concrete injury sufficient to establish Article III standing. For § 1681g(a)(1) claims, Plaintiff's receipt of an incomplete file disclosure that prevented him from reviewing and verifying the accuracy of his own credit file independently constitutes a concrete informational injury, as Equifax withheld data to which Plaintiff was statutorily entitled.

44. The April 2026 Disclosure reflects account-review and other permissible-purpose inquiries from the following entities who accessed Plaintiff's consumer file, confirming that Equifax transmitted Plaintiff's consumer report — containing the per se inaccuracies and incomplete data described herein — to third parties during the relevant period:

45. Equifax (internal review), April 26, 2026 and April 3, 2026;

46. CIC/Experian RPTS, April 2, 2026;

47. Macys/Citibank, N.A., on twelve (12) occasions: April 12, 2026; March 13, 2026; February 10, 2026; January 13, 2026; December 13, 2025; November 12, 2025; October 13, 2025; September 12, 2025; August 13, 2025; July 13, 2025; June 12, 2025; and May 13, 2025;

48. LexisNexis (Insurance P&C Underwriting), November 18, 2024;

49. Capital One National Assoc., on sixty-four (64) occasions between April 29, 2025 and April 14, 2026;

50. Progressive Insurance, on seven (7) occasions: January 20, 2026; December 23, 2025; November 18, 2025; September 23, 2025; August 19, 2025; July 22, 2025; and May 20, 2025.

51. Each instance in which Equifax transmitted Plaintiff's consumer report — containing the per se inaccuracies described herein — to any of the foregoing third parties constitutes a separate dissemination confirming concrete injury. Plaintiff has therefore suffered concrete, particularized harm sufficient to establish standing under TransUnion LLC v. Ramirez, 141 S. Ct. 2190 (2021).

## I. Willfulness Allegations

52. Equifax's violations of the FCRA were willful within the meaning of 15 U.S.C. § 1681n and as interpreted by Safeco Insurance Co. of America v. Burr, 551 U.S. 47, 57-69 (2007). Under Safeco, a CRA acts willfully when its conduct involves an objectively unreasonable interpretation of the FCRA and creates a risk of harm substantially greater than the risk accompanying ordinary negligence. Equifax's conduct satisfies this standard on at least three independent grounds.

53. First, the FTC Advisory Opinion to Darcy (June 30, 2000) placed all CRAs on notice over twenty-five years ago that withholding file data from a consumer's own disclosure — while providing that data to third-party purchasers — violates § 1681g(a)(1). Equifax has had actual and constructive notice of this obligation since the year 2000. Its continued systemic omission of Actual Payment Amounts, Last Payment Dates, and complete payment history grids from consumer-facing disclosures, while on information and belief transmitting that same data to third parties who purchase consumer reports, is objectively unreasonable under Safeco, 551 U.S. at 69.

54. Second, the identical pattern of blank Actual Payment Amount fields appearing across all eleven accounts, the identical static placeholder date of December 17, 2024 appearing across two unrelated accounts spanning multiple months, and the wholesale omission of the entire 24-Month Balance History from the CAPITAL ONE BANK USA NA (*4061) account confirm that the omissions result from deliberate software policy — not isolated data error. Courts have consistently distinguished systemic, uniform omissions from random clerical mistakes in the willfulness analysis. A systemic policy-level suppression of consumer-facing data is the paradigm case of objectively unreasonable conduct under Safeco, 551 U.S. at 69.

55. Third, Equifax's failure to implement a basic automated data-integrity check that would prevent the publication of a consumer report in which an account's reported balance exceeds its stated credit limit — a mathematically impossible condition for any accurately maintained revolving account — is independently objectively unreasonable. Such a check requires only the comparison of two numeric fields already present in Equifax's database.

56. The systemic, cross-account nature of these omissions and the persistence of per se inaccuracies over multiple consecutive reporting periods without correction support an award of punitive damages under 15 U.S.C. § 1681n(a)(2). Williams v. First Advantage LNS Screening Solutions, Inc., 947 F.3d 735, 743-46 (11th Cir. 2020) (affirming punitive damages award for willful CRA violations where a systemic pattern of noncompliance weighed heavily in plaintiff's favor).

## J. Actual Damages

57. As a direct and proximate result of Equifax's violations of the FCRA, Plaintiff has suffered actual damages including, without limitation: (a) emotional distress, frustration, and anxiety arising from the inability to review, understand, and verify the accuracy of his own credit file due to the pervasive omissions in the April 2026 Disclosure; (b) loss of time spent reviewing the deficient disclosure and attempting to identify and reconcile the missing data; (c) inability to effectively monitor or dispute credit information due to Equifax's failure to provide a complete file disclosure; and (d) potential harm to creditworthiness and credit opportunities arising from the materially inaccurate balance reporting on the MACYS/CITIBANK NA (*2925), BARCLAYS BANK DELAWARE (*6162), and CAPITAL ONE BANK USA NA (*4878)

accounts, which misrepresents the ratio of outstanding balance to credit limit as it has been disseminated to third parties.

## CAUSES OF ACTION

## COUNT I

## VIOLATION OF 15 U.S.C. § 1681g(a)(1)

## FAILURE TO CLEARLY AND ACCURATELY DISCLOSE ALL FILE INFORMATION

58. Plaintiff incorporates by reference and realleges paragraphs 1 through 57 as if fully stated herein.

59. Section 1681g(a)(1) of the FCRA mandates that every CRA shall, upon request, "clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). The definition of "file" under 15 U.S.C. § 1681a(g) is comprehensive: "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored."

60. Equifax violated § 1681g(a)(1) when, in response to Plaintiff's April 26, 2026 file disclosure request, it furnished the April 2026 Disclosure bearing Confirmation Number 6116528416 while omitting in excess of 240 individual data fields, as specifically documented in paragraphs 18 through 28 above, including without limitation:

61. The Actual Payment Amount for all twenty-four (24) monthly entries in each of the AMERICAN EXPRESS (*1553), CAPITAL ONE BANK USA NA (*4878), and JPMCB

CARD SERVICES (*0588) tradelines, representing seventy-two (72) blank payment fields from those three accounts alone;

62. The Actual Payment Amount for all twenty-four (24) monthly entries in the MACYS/CITIBANK NA (*2925) tradeline;

63. The Actual Payment Amount for five (5) monthly entries in BARCLAYS BANK DELAWARE (*6162), four (4) in CREDIT ONE BANK (*6288), four (4) in CREDIT ONE BANK (*8460), five (5) in CREDIT ONE BANK (*6154), eight (8) in SYNCB/PAYPAL CREDIT CARD (*3409), and ten (10) in TD BANK USA/TARGET CREDIT (*1229);

64. The Last Payment Date for all twenty-four (24) months in the AMERICAN EXPRESS (*1553) tradeline;

65. The entire 24-Month Balance History for the CAPITAL ONE BANK USA NA (*4061) tradeline, including all balance data, scheduled payment amounts, actual payment amounts, last payment dates, past due amounts, and high credit information;

66. Numerous ND (No Data Available) cells in the payment history grids of BARCLAYS BANK DELAWARE (*6162), CREDIT ONE BANK (*6288), AMERICAN EXPRESS (*1553), CAPITAL ONE BANK USA NA (*4878), JPMCB CARD SERVICES (*0588), CREDIT ONE BANK (*6154), SYNCB/PAYPAL CREDIT CARD (*3409), TD BANK USA/TARGET CREDIT (*1229), and CAPITAL ONE BANK USA NA (*4061), spanning months during which those accounts were open and active; and

67. The static placeholder date of December 17, 2024, inserted identically as the "Last Payment Date" across nine (9) consecutive rows of the MACYS/CITIBANK NA (*2925) account and seven (7) consecutive rows of the TD BANK USA/TARGET CREDIT (*1229)

account, confirming a systemic programmatic substitution of static data for actual payment records.

68. On information and belief, Equifax maintains the complete Actual Payment Amounts, Last Payment Dates, and payment history data for each of Plaintiff's accounts within its internal databases and transmits that data to third-party recipients of consumer reports, while systematically withholding the same data from Plaintiff's own file disclosure. Gillespie v. Trans Union Corp., 482 F.3d 907, 909 (7th Cir. 2007) (even under a narrow reading, "file" includes all data provided to third parties). This selective withholding is precisely the conduct the FTC Darcy Opinion identified as non-compliant with § 1681g(a)(1) over twenty-five years ago.

69. The deficiency of the April 2026 Disclosure renders it impossible for Plaintiff to determine the accuracy of his own credit file, in direct violation of the standard articulated in Alexander v. Equifax Info. Servs., LLC, 2018 WL 3025939 (D. Nev. 2018).

70. Equifax's violations were willful within the meaning of 15 U.S.C. § 1681n for the reasons set forth in paragraphs 52 through 56. Alternatively, Equifax's violations were at minimum negligent within the meaning of 15 U.S.C. § 1681o.

71. As a result of Equifax's violations of § 1681g(a)(1), Plaintiff is entitled to actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1); statutory damages of $100 to $1,000 per willful violation pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and costs of this action pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2).

## COUNT II

## VIOLATION OF 15 U.S.C. § 1681e(b)

## PER SE INACCURACY — BALANCE EXCEEDS CREDIT LIMIT

72. Plaintiff incorporates by reference and realleges paragraphs 1 through 57 as if fully stated herein.

73. Section 1681e(b) requires that consumer reporting agencies "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

74. A report showing a balance exceeding the stated credit limit is a per se inaccuracy under the FCRA. Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1163 (9th Cir. 2009). An account balance cannot legitimately exceed its own credit limit without a corresponding limit adjustment; reporting otherwise presents a false picture of the consumer's credit utilization and financial profile.

75. The April 2026 Disclosure contains per se inaccuracies on three accounts:

76. MACYS/CITIBANK NA (*2925): Balance reported as $479.00 against a stated credit limit of $200.00, an excess of $279.00. This inaccuracy appears on the face of the disclosure across all twenty-four (24) reported months from April 2024 through March 2026.

77. BARCLAYS BANK DELAWARE (*6162): Balance of $789.00 reported in January 2026 against a credit limit of $750.00 (excess of $39.00); balance of $760.00 reported in March 2025 against a credit limit of $750.00 (excess of $10.00). Each instance independently constitutes a per se inaccuracy.

78. CAPITAL ONE BANK USA NA (*4878): Balance of $2,544.00 reported in March 2026 against a credit limit of $2,500.00 (excess of $44.00). This constitutes a per se inaccuracy.

79. These inaccuracies were transmitted to third parties — including Macys/Citibank, N.A., Capital One National Assoc., and Progressive Insurance — as documented in paragraphs 44

through 51 above, thereby establishing concrete injury sufficient to confer Article III standing under TransUnion LLC v. Ramirez, 141 S. Ct. 2190 (2021).

80. Equifax's failure to implement a basic automated data-integrity check comparing two numeric fields on the same account entry constitutes a failure to follow reasonable procedures to assure maximum possible accuracy as required by § 1681e(b).

81. Equifax's violations of § 1681e(b) were willful for the reasons set forth in paragraphs 52 through 56. Alternatively, such violations were negligent. Plaintiff is entitled to actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and costs pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2).

## COUNT III

## VIOLATION OF 15 U.S.C. § 1681i(a)(1)(A)

## FAILURE TO CONDUCT REASONABLE REINVESTIGATION

82. Plaintiff incorporates by reference and realleges paragraphs 1 through 57 as if fully stated herein.

83. Section 1681i(a)(1)(A) of the FCRA requires that when a consumer notifies a CRA of a dispute, the CRA must, within thirty (30) days, "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A).

84. Plaintiff previously disputed the information in his file regarding the CREDIT ONE BANK account bearing account number ending in *6154, as evidenced by Narrative Code 166

— "Consumer Disputes This Account Information" — appearing in the January 2026 reporting row of the April 2026 Disclosure.

85. Plaintiff previously disputed the information in his file regarding the SYNCB/PAYPAL CREDIT CARD account bearing account number ending in *3409, as evidenced by Narrative Code 166 — "Consumer Disputes This Account Information" — appearing in the April 2024 reporting row of the April 2026 Disclosure.

86. Notwithstanding receipt of those disputes, Equifax failed to conduct a reasonable reinvestigation as required by § 1681i(a)(1)(A). As demonstrated by the continued presence of Code 166 on the April 2026 Disclosure and the continued blank Actual Payment Amount fields across multiple months of each disputed account, Equifax either failed to investigate within the required period or conducted only a perfunctory rubber-stamp review by relaying the dispute to the data furnisher via ACDV and accepting the furnisher's response without independent analysis.

87. A CRA's reinvestigation must go beyond mere submission of an ACDV to the furnisher; the CRA must independently review the consumer's account information and any documentation submitted. Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997); Ghazaryan v. Equifax Info. Servs., LLC, 740 F. App'x 157, 158 (9th Cir. 2018). Equifax's reinvestigation of Plaintiff's disputes did not satisfy this standard.

88. Equifax's violations of § 1681i(a)(1)(A) were willful or, in the alternative, negligent. Plaintiff is entitled to actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and costs pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2).

## COUNT IV

## VIOLATION OF 15 U.S.C. § 1681i(a)(5)(A)

## FAILURE TO DELETE OR MODIFY UNVERIFIABLE INFORMATION

89. Plaintiff incorporates by reference and realleges paragraphs 1 through 57 as if fully stated herein.

90. Section 1681i(a)(5)(A) of the FCRA requires that, following reinvestigation, if disputed information "is found to be inaccurate, incomplete, or cannot be verified," the CRA shall "promptly delete that item of information from the file of the consumer or modify that item of information, as appropriate, based on the results of the reinvestigation." 15 U.S.C. § 1681i(a)(5)(A).

91. Following Plaintiff's disputes of the CREDIT ONE BANK (*6154) and SYNCB/PAYPAL CREDIT CARD (*3409) accounts, Equifax failed to delete or modify the inaccurate and unverifiable information in those accounts as required by § 1681i(a)(5)(A). The April 2026 Disclosure, generated on April 26, 2026, continues to show blank data fields and the active Code 166 dispute notation on both accounts, confirming that Equifax neither corrected the underlying data nor completed a reinvestigation that would permit it to verify the accuracy of the disputed entries.

92. Equifax's violations of § 1681i(a)(5)(A) were willful or, in the alternative, negligent. Plaintiff is entitled to actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and costs pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2).

## COUNT V

## VIOLATION OF 15 U.S.C. § 1681i(c)

## FAILURE TO NOTE DISPUTED STATUS IN SUBSEQUENT REPORTS

93. Plaintiff incorporates by reference and realleges paragraphs 1 through 57 as if fully stated herein.

94. Section 1681i(c) of the FCRA requires that if a consumer notifies a CRA that certain information is disputed, and the CRA does not delete the item following reinvestigation, the CRA must "clearly note that the item of information is disputed by the consumer" in any subsequent consumer report containing the information.

95. Equifax has continued to furnish Plaintiff's consumer report to third parties — as evidenced by the account-review inquiry entries from Capital One National Assoc., Macys/Citibank, N.A., Progressive Insurance, and others documented in paragraphs 44 through 50 above — without adequately notating the disputed status of the CREDIT ONE BANK (*6154) and SYNCB/PAYPAL CREDIT CARD (*3409) accounts in those third-party reports.

96. Equifax's violations of § 1681i(c) were willful or, in the alternative, negligent. Plaintiff is entitled to actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and costs pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Stanley Nazaire respectfully requests that this Court enter judgment in his favor and against Defendant Equifax Information Services, LLC, and award the following relief:

(a) Judgment for Plaintiff on all counts;

(b) Actual damages in an amount to be determined at trial, pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(c) Statutory damages of $100 to $1,000 per willful violation pursuant to 15 U.S.C. § 1681n(a)(1)(A), with each third-party dissemination of the inaccurate or incomplete consumer report constituting a separate violation;

(d) Punitive damages for Equifax's willful violations of the FCRA pursuant to 15 U.S.C. § 1681n(a)(2);

(e) Costs of this action pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

(f) Injunctive relief directing Equifax to provide Plaintiff with a complete and corrected consumer file disclosure, including all Actual Payment Amounts, Last Payment Dates, payment history grid data, and balance history data maintained in Equifax's databases with respect to each of Plaintiff's accounts; and

(g) Such other and further relief as this Court deems just and proper.

Plaintiff reserves the right to amend this Complaint pursuant to FRCP Rule 15(a) to add additional counts following expiration of the CRA's 30-day reinvestigation window.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Stanley Nazaire demands a trial by jury on all issues so triable.